**MONARCH LONG BEACH CORP.,**
**Plaintiff-Appellant,**

v.

**SOFT DRINK WORKERS, LOCAL 812, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, David Levinger, as President of said Local Union, Anthony Vinci, as Secretary-Treasurer of said Local Union, Defendants-Appellees.**

**No. 845, Docket 84–7866.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1985.
Decided May 20, 1985.

Martin H. Scher, Carle Place, N.Y. (Jeffrey Mintz, Carle Place, N.Y., of counsel), for plaintiff-appellant.

Sidney Fox, New York City (Gerald Richman, Robert A. Bugos, Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, of counsel), for defendants-appellees.

Before KAUFMAN, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Eastern District of New York, Wexler, *J.*, dismissing both counts of Monarch Long Beach Corporation's (Monarch) complaint against Soft Drink Workers, Local 812, International Brotherhood of Teamsters, and the President and Secretary-Treasurer of Local 812 (collectively Local 812 or the union), 593 F.Supp. 384 (E.D.N.Y. 1984). Both counts sought damages for alleged injuries to Monarch's business resulting from the secondary boycott activities of the union. Relying on *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the district court dismissed count one, a claim under section 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 187 (1982), as untimely filed. The court dismissed the second count, a pendent state claim, on federal preemption grounds.

We believe that the district court's application of *DelCostello* was incorrect and

that count one was timely filed and should not have been dismissed. The district court correctly concluded that Monarch's state law claim was preempted by federal law.

## BACKGROUND

Local 812 is a labor organization that represents primarily workers employed by soft drink manufacturers in the New York City metropolitan area. In 1977 and 1978, due at least in part to the high costs of doing business in and around New York City, a number of soft drink manufacturers in Local 812's jurisdiction suffered precipitous declines in business. As a result, many Local 812 members lost their jobs. A survey conducted by the union revealed that a substantial number of area retailers purchased their soft drink products from outside of Local 812's territory.

Monarch, a retailer and wholesaler of beer and soda located in Local 812's jurisdiction, at all times relevant to this litigation purchased most of its soda from non-local manufacturers. On March 27, 1978, Local 812 began to picket and distribute handbills at Monarch's retail outlet. Union members urged customers to buy only locally produced soft drinks from Monarch.

On April 7, 1978, Monarch filed an unfair labor practice charge against Local 812. The National Labor Relations Board (NLRB or Board) issued a complaint against the union for engaging in prohibited secondary boycott activities in violation of section 8(b)(4)(ii)(B) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b)(4)(ii)(B) (1982). The Board's petition for a section 10(*l*), 29 U.S.C. § 160(*l*) (1982), injunction was denied by the United States District Court for the Eastern District of New York on May 30. The picketing continued through June 1978, while hearings were being held before the NLRB administrative law judge (ALJ). Picketing finally ended on August 25, 1978 when the New York Supreme Court, at Monarch's request, issued a preliminary injunction.[1]

---

**1.** Monarch sued Local 812 in state court seeking    damages and injunctive relief. The suit was

The ALJ decided against Local 812 in March 1979. The Board affirmed the ALJ's findings and conclusions and issued a cease and desist order against the union. Local 812 appealed to the D.C. Court of Appeals.[2] That court affirmed the Board's decision and granted the Board's cross-application for enforcement. *Soft Drink Workers Union Local 812 v. NLRB,* 657 F.2d 1252 (D.C.Cir.1980).

Monarch filed this action in the federal district court for the Eastern District of New York on August 25, 1981—exactly three years from the date on which the picketing ended. The district court dismissed Monarch's complaint on September 21, 1984.

## DISCUSSION

### A. *Count One—The Section 303 Claim*

Seeking reparation for economic harm allegedly caused by Local 812's unlawful conduct, Monarch's federal cause of action stated a claim for damages under section 303 of the LMRA. That provision confers upon any person "injured in his business or property" as a result of secondary boycott activities—conduct deemed unlawful for the limited purpose of the provision—a right of action to "recover the damages by him sustained and the cost of the suit." Section 303 contains no limitation period.

When Congress creates a federal cause of action but does not expressly provide an applicable statute of limitations, we assume that Congress intended the courts to adopt the limitation period of an analogous cause of action. Ordinarily, courts have drawn a rule from state law, *Johnson v. Railway Express Agency,* 421 U.S. 454, 462–65, 95 S.Ct. 1716, 1721–23, 44 L.Ed.2d 295 (1975); *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–04, 86 S.Ct. 1107, 1111–13, 16 L.Ed.2d 192 (1966), and "resort

to state law remains the norm for borrowing of limitations periods." *DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294. But where the application of a state statute of limitations would "frustrate or interfere with the implementation of national policies" or "be inconsistent with the underlying policies of the federal statute," courts should borrow a timeliness rule from federal law. *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977); *Wilson v. Garcia,* — U.S. —, — & n. 12, 105 S.Ct. 1938, 1941 & n. 12, 85 L.Ed.2d 254 (1985).

Examining this practice within the specialized realm of labor law, the Supreme Court in *DelCostello* explained that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, [courts should] not hesitate[ ] to turn away from state law." 462 U.S. at 172, 103 S.Ct. at 2294. The issue before the *DelCostello* Court was what limitations period to apply to a hybrid section 301/duty of fair representation suit brought by an employee against an employer under section 301 of the LMRA, 29 U.S.C. § 185 (1982), for breach of the collective bargaining agreement and against a union for breach of its duty of fair representation. The Court concluded that ordinary state law provided no adequate analogy to the hybrid suit and thus it turned to federal law to find an appropriate statute of limitations.

Guided by a number of related concerns, the *DelCostello* Court adopted the six month period for filing unfair labor charges with the NLRB contained in section 10(b) of the NLRA, 29 U.S.C. § 160(b). Noting the close analogy, indeed occasional

removed to federal court and then remanded to state court. That litigation, including Monarch's November 1984 motion to amend the complaint to add a federal section 303 claim, is still pending. The state law claim was identical to the pendent claim alleged in the suit before us.

2. Section 10(f) of the NLRA, 29 U.S.C. § 160(f) (1982), permits any person aggrieved by a final order of the Board to obtain review in the court of appeals in which the unfair labor practice was committed or in the Court of Appeals for the District of Columbia.

overlap, of unfair labor practices on the one hand and, on the other hand, a union's breach of its duty of fair representation and an employer's breach of a collective bargaining agreement, the Court explained that the section 10(b) limitation period was "actually designed to accommodate a balance of interests very similar to that at stake" in a hybrid suit. 462 U.S. at 169, 103 S.Ct. at 2292. Those interests, which could not properly be served by state law, included the effectuation of the purposes and policies of the federal labor laws, particularly the maintenance of industrial peace and the rapid resolution of labor disputes, and the need for national uniformity in the regulation of labor relations.

■ In this case, the district court assumed that because the section 303 cause of action involves an unfair labor practice, "the rationale for applying the six month statute of limitations for charges of unfair labor practices before the National Labor Relations Board is at least as strong here as it was in *DelCostello*." 593 F.Supp. at 385. Taking this approach one step further, Local 812 urges that the need for prompt resolution and national uniformity is even greater in the context of section 303 suits than in the context of hybrid section 301/duty of fair representation suits. We cannot accept this reasoning. We believe that the *DelCostello* analysis compels us in the context of a section 303 suit to adhere to the general rule and turn to state law to find an appropriate statute of limitations.

The policy considerations that influenced the *DelCostello* Court were rooted in the facilitation and protection of "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it." 462 U.S. at 162–63, 165, 103 S.Ct. at 2289–90, 2291 (quoting *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966)). Section 303 suits simply do not implicate the same concerns. Although it depends on the commission of an unfair labor practice by the union, specifically a secondary boycott, the section

303 cause of action involves parties who are otherwise completely unrelated. The dispute upon which liability is predicated is not a collective bargaining dispute; it does not arise within the context of a labor-management relationship. Labor peace will not be disrupted if section 303 suits are not rapidly resolved.

The *DelCostello* Court itself cautioned that its holding "should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere," that it should not be interpreted "to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy." 462 U.S. at 171, 103 S.Ct. at 2294. Thus the Court's own language supports our conclusion that *DelCostello* should be narrowly construed. The particularized circumstances of the hybrid section 301/duty of fair representation suit, which inevitably involve an immediate and direct impact on labor-management relations, demarcate the limits of *DelCostello*'s reach. *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 167–68 (2d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985); *see also Adams v. Gould Inc.*, 739 F.2d 858, 866–67 (3d Cir.1984).

In accordance with the general rule, therefore, we turn to state law for a section 303 analogue from which to borrow a limitations period. The nature of the section 303 cause of action is easily discernible from the face of the statute. It is an action to recover injuries to one's business or to one's property caused by a specific type of tortious conduct. The disjunctive enumeration of these compensable harms evidences Congress' intent that the two be treated as separate wrongs. It is reasonable to assume, therefore, that they should be considered separately for purposes of identifying an appropriate limitations period. *Cf. Wilson v. Garcia*, —— U.S. at —— ——, 105 S.Ct. at 1943–49 (the nature of 42 U.S.C. § 1983 requires that all claims brought pursuant thereto be characterized

**232**

in the same way for statute of limitations purposes).

 Monarch seeks damages for alleged injury to its business caused by Local 812's picketing. It alleged no injury to property. The most suitable state law analogue, therefore, is New York's cause of action for damages to one's business caused by actions in restraint of trade, N.Y.Gen. Bus.Law § 340 (McKinney 1968 & Supp. 1984), which has a four year statute of limitations. Thus, even if we assume that the four years began to run on the first day of picketing, March 27, 1978, this action, filed on August 25, 1981, was timely. Therefore, we reverse the district court's dismissal of count one.

B. *Count Two—The Pendent State Claim*

 Based on precisely the same facts as count one, count two alleged that Local 812 intentionally interfered with Monarch's operation, seeking to effect an embargo in contravention of New York law and policy, and that as a result Monarch's business was harmed. Except for a claim for punitive damages, count two is merely a state law version of a section 303 claim. Settled precedent overwhelmingly supports Local 812's argument that the cause of action stated in count two, including the punitive damages claim, is preempted by federal labor law.

Addressing this same issue in *Local 20, Teamsters v. Morton*, 377 U.S. 252, 261, 84 S.Ct. 1253, 1259, 12 L.Ed.2d 280 (1964), the Supreme Court explained that "state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities." The Court also held that the preemptive effects of section 303 extended to punitive damages. *Id.* at 260–61, 84 S.Ct. at 1258–59. More than ten years after *Morton*, we echoed its holding and affirmed the dismissal of a state law claim virtually identical to Monarch's. *Iodice v. Calabrese*, 512 F.2d 383, 390 (2d Cir.1975).

The dismissal of count one, Monarch's section 303 claim, is reversed and that count is remanded to the district court for trial. The dismissal of count two, Monarch's pendent state claim, is affirmed. The parties shall bear their own costs.