852 F.2d 185
 128 L.R.R.M. (BNA) 3109, 109 Lab.Cas. P 10,607
 Wayne L. BAILEY, et al., for Themselves and for all Other
Employees Herein as Group II Employees, Chessie
System, Plaintiffs-Appellants,
v.
The CHESAPEAKE AND OHIO RAILWAY CO., also Known as the
Chessie System and the National Maritime Union of
America, Defendants-Appellees.
 No. 87-1733.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 17, 1988.
Decided July 20, 1988.
 
 Peter J. Wadel, argued, Wadel & Bulger, P.C., Ludington, Mich., for plaintiffs-appellants.
 Kevin B. Krauss, James L. Wernstrom, Law, Weathers & Richardson, Grand Rapids, Mich., Robert E. Swickle, The Jaques Admiralty Law Firm, Detroit, Mich., for Chesapeake and Ohio Ry. Co.
 Sidney H. Kalban, argued, Cappiello, Hofman & Katz P.C., New York City, for Nat. Maritime Union.
 Before KEITH and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Appellants, members of the National Maritime Union (the Union), until recently were employed by the Chesapeake and Ohio Railway (C & O). They claim that it was error for the district court to dismiss their claim based upon the statute of limitations. We affirm.
 
 
 2
 The events leading to this lawsuit began when C & O, based on continuing losses, decided to sell its ferry operations to another company. Before it could complete the sale, however, C & O had to negotiate a settlement terminating the collective bargaining agreement then in force with the union. The negotiations were successful, and the union agreed to terminate the bargaining agreement in exchange for C & O's promise to provide severance pay and to arrange the continuation of jobs with the purchasing company. This agreement sparked the present controversy with plaintiffs.
 
 
 3
 The termination agreement, signed June 20, 1983, divided employees into two groups. "Group I" employees, having more seniority under the previous collective bargaining agreement, received a choice between lump sum severance pay, or $5,000 plus secure employment with the successor. "Group II" employees were less senior and were given the option of severance pay and employment with the new ferry operator. This second group, including named plaintiffs, sued both the employer and the union because it felt that a better deal should have been negotiated. Specifically, the group was disgruntled by the fact that the union ratified the agreement even though allegedly it was aware the membership was not in favor of it.
 
 
 4
 The plaintiffs filed their action in district court on June 19, 1985. The salient allegations in the complaint are found in paragraphs ten and seventeen, which state:
 
 
 5
 10. Defendant NMU owed to its members a duty to fairly represent the members of its collective bargaining unit and to actively negotiate and contract in their interest.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 17. Defendant C & O breached its duty to bargain in good faith with NMU over the wages, hours and conditions of employment in the sale of its Lake Michigan carferry service to MWT [the purchaser].
 
 
 9
 These allegations were consistent with the other assertions in the complaint. The district court dismissed the complaint on the basis of untimely filing. The plaintiffs argued that their complaint was not covered by the federal labor statutes, but was a simple breach of contract action subject to the six-year statute of limitations set out in Mich.Comp.Laws Sec. 600.5807. The court instead characterized the complaint as a hybrid duty of fair representation/Sec. 301 action. As such, the court applied the six-month statutory period of 29 U.S.C. Sec. 160(b), as set out in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This appeal followed.
 
 
 10
 As an initial matter, we must decide whether the ruling in DelCostello is controlling in this case. Because the employer here is a railroad, its actions are governed by the Railway Labor Act, 45 U.S.C. Sec. 151 et seq. The DelCostello decision was decided under the Labor Management Relations Act, but we believe it applies to the Railway Labor Act as well. In this regard, we are mindful of decisions from other circuits which have applied the case to railroad employers. See, e.g., Welyczko v. U.S.Air, Inc., 733 F.2d 239 (2d Cir.), cert. denied, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); Sisco v. Consolidated Rail Corp., 732 F.2d 1188 (3d Cir.1984).[1] Application of DelCostello therefore applies in this case to the same extent that it would under the LMRA. The same principles and rationale logically follow under each Act dealing the employer-employee relations.
 
 
 11
 We agree with the district court that this action is governed by section 301 of the Labor Management Relations Act, and is not an ordinary contract action. The face of the complaint shows that the plaintiffs have alleged a hybrid duty of fair representation/Sec. 301 action, despite their present attempt to label it as something else. See Chrysler Workers Association v. Chrysler Corp., 834 F.2d 573 (6th Cir.1987) (hybrid action is made up of a claim against the union and employer). We are aware that the limitations period applied in DelCostello should not be applied to every labor contract dispute, and that actions asserting only a breach of a collective bargaining agreement not accompanied by a claim against a union may be ruled by the statutory period applicable to state contract actions unless preempted. 462 U.S. at 165, 103 S.Ct. at 2291; International Union, United Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). In this case, however, we are not presented with a claim that C & O, the employer, has not abided by a collective bargaining agreement; instead, we have an allegation that the agreement itself is somehow invalid. In such situations the rule of DelCostello applies. See Lewis v. International Brotherhood of Teamsters, Local 771, 826 F.2d 1310 (3d Cir.1987); Clift v. United Auto Workers, 818 F.2d 623 (7th Cir.1987).
 
 
 12
 To agree with plaintiffs would sanction a longer statute of limitations, and we would be encouraging the type of disruptions and delays which prompted the Supreme Court to apply a short limitations period in the first place. In such a posture of uncertainty, neither the employer nor the union could rely on an agreement until the lawsuit was ultimately resolved. Lewis, 826 F.2d at 1316. We cannot agree with plaintiffs who have, for the most part, accepted the benefits of the agreement in controversy and now seek to set it aside in an attempt to bargain for a better arrangement. There is no showing that the union acted in bad faith, arbitrarily, or illegally with regard to plaintiffs. See Ruzicka v. General Motors Corp., 649 F.2d 1207 (6th Cir.1981); Dill v. Greyhound Corp., 435 F.2d 231 (6th Cir.1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971).
 
 
 13
 Finally, we address C & O's motion for sanctions against the appellants for bringing a frivolous appeal. We will not award sanctions in this case because of our previously unexpressed position on the applicability of DelCostello to Railway Labor Act cases.
 
 
 14
 Accordingly, we AFFIRM the decision of the district court.
 
 
 
 [1]
 We note that we have also previously adopted this position in Loew v. Consolidated Rail Corp., 812 F.2d 1407 (6th Cir.1987)