NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, Robert Paletta and Barbara Kalish, as Trustees of the Publishers'–Newspaper and Mail Deliverers' Welfare Fund and the Newspaper and Mail Deliverers'–Publishers Pension Fund, Plaintiffs,

v.

UNITED MAGAZINE COMPANY, Yankee News Co., Inc., Ronald E. Scherer, Magazine Distributors, Inc., MDI Distributors, Limited Partnership and Robert B. Cohen, Defendants.

No. CV 92–0449 (ADS).

United States District Court, E.D. New York.

Nov. 27, 1992.

O'Connor & Mangan, P.C. by J. Warren Mangan, Long Island City, NY, for plaintiffs.

David A. Mortman, P.C. by Johan de Muinck Keizer, New York City, for defendants Magazine Distributors, Inc., MDI Distributors, Ltd. Partnership, and Robert B. Cohen

Townley & Updike by John D. Canoni, Christopher D'Angelo, New York City, for defendants United Magazine Co. and Ronald E. Scherer.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In a case of apparent first impression, the Court must determine the applicable statute of limitations for the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"). The underlying action was commenced pursuant to WARN and the Employee Retirement Income Security Act ("ERISA") seeking damages as a result of the allegedly improper closing of a place of business in Melville, New York ("Melville Plant").

The defendants move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), 12(b)(7), and 12(c). The plaintiffs oppose these motions.

## BACKGROUND

Imperial News Co. ("Imperial") and Yankee News Co., Inc. ("Yankee"), are wholly-owned subsidiaries of defendant United Magazine Company ("United"). Imperial was a distributor of magazines and paperback books in the New York City area. Prior to January 1, 1991, Imperial was the exclusive wholesaler in this area for the six largest national distributors of periodicals. During October 1990, Hudson News Co. ("Hudson") was informed that it would be taking over for Imperial as wholesaler for four of these six distributors as of January 1, 1991. Defendant Robert B. Cohen ("Cohen") owns and operates Hudson. The defendant Ronald E. Scherer ("Scherer") was the president of National Wholesale Drug Company ("National") and its wholly owned subsidiary NAQ Corporation ("NAQ"). NAQ was incorporated for the sole purpose of purchasing the assets of Imperial.

Prior to January 1, 1991, Cohen acquired the defendant, Magazine Distributors, Inc. ("MDI Corp.") to assist in handling this new business. Effective January 1, 1991, MDI Corp. became the exclusive wholesaler for the four distributors mentioned above and Imperial's business declined by sixty-five (65) percent.

In late 1990, after acquiring MDI Corp., Cohen commenced negotiations with four of the defendants: Scherer, the President and principal shareholder of defendant United, the President of Imperial, and the Chairman of defendant Yankee ("the Scherer entities"). These negotiations concerned the sale of Imperial's assets to MDI Corp. The plaintiffs allege that during these negotiations all of the parties mentioned had knowledge of monies allegedly owed to the plaintiffs.

On January 18, 1991, MDI and the Scherer entities executed a letter of intent concerning the acquisition of Imperial's assets by MDI Corp. which contained a contemplated closing date. However, an agreement was never executed on that contemplated closing date. On March 8, 1991, Scherer signed a Bill of Sale with the heading "effective January 23, 1991", conveying to MDI Corp. title to forty-eight (48) delivery trucks and three automobiles of Imperial for approximately $300,000. On June 10, 1991, another Bill of Sale was executed conveying to MDI Corp. all of Imperial's

"book and magazine" assets including its inventories of periodicals and office and truck supplies.

On January 23, 1991, the employees of Imperial's Melville Plant were orally notified that the plant was being closed and they were being terminated, effective January 24, 1991. No written notice was given. The complaint alleges that many employees were offered employment with MDI's Hicksville Warehouse. On January 24, 1991, the above-mentioned forty-eight (48) trucks, along with the equipment and machinery used by Imperial for the distribution of periodicals from the Melville plant, were moved to the Hicksville warehouse, and all of the periodicals formerly distributed by Imperial were delivered from the Hicksville warehouse. Imperial's Melville plant was permanently shut down on January 24, 1991.

The plaintiff Newspaper and Mail Deliverers' Union ("NMDU"), as the authorized collective bargaining representative for Imperial's Melville warehouse employees, signed a collective bargaining agreement ("Labor Agreement") with Imperial which was to be in effect through May 31, 1993. The Labor Agreement required Imperial to make contributions on behalf of these employees into NMDU's Welfare Fund and Pension Fund. The plaintiffs allege that no such contributions were made after November 30, 1990.

The Labor Agreement also provided for the posting of a bond to insure the payment to the relevant employees of severance pay and other fringe benefits in the event any magazine publisher terminated, suspended or modified its deliveries through Imperial. Despite a directive contained in an arbitration award confirmed by Judge Weinstein, no bond was posted by Imperial, nor did these employees receive their severance pay or fringe benefits upon the closing of the Melville Plant.

The Complaint, dated January 31, 1992 and filed on or about February 3, 1992, sets forth three causes of action against the defendants. The first cause of action asserts that the defendants are liable to the plaintiffs for damages under the Worker Adjustment and Retraining Act of 1988 ("WARN") due to Imperial's failure to provide notice of the Melville Plant closing, charging that the individual defendants are liable under an "alter ego" theory. In the second cause of action, the defendants are alleged to be liable to the plaintiffs for the contributions Imperial failed to make to NMDU's Welfare and Pension Funds, again applying the "alter ego" theory to the individual defendants. The plaintiffs contend in their third cause of action that the defendants are liable for the accrued and vested severance pay and other fringe benefits due to Imperial's employees.

## MOTIONS

The defendants United and Scherer assert the following grounds for dismissal of the complaint: Fed.R.Civ.P. 12(b)(1), lack of subject matter jurisdiction; Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted; and Fed.R.Civ.P. 12(b)(7), failure to join a party under Fed. R.Civ.P. 19. These defendants also move pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings.

The defendants MDI Distributors, Limited Partnership, MDI Inc., and Cohen assert the following grounds for dismissal of the complaint: Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted; and Fed.R.Civ.P. 12(b)(7), failure to join a party under Fed.R.Civ.P. 19.

At the outset, the Court notes that under Fed.R.Civ.P. 12, the Court may not consider matters submitted outside the pleading unless notice is given to all parties that the motion is being converted to a motion for summary judgment (*See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 [2d Cir.1990]; *see also Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 38 [2d Cir.1990] [this rule is mandatory] ). Since, no such notice was given to the parties the Court will not consider papers other than the pleadings (*See Maggette v. Dalsheim*, 709 F.2d 800, 802 [2d Cir.1983] ["a court is not obligated to treat a 12(c) motion as a motion for summary judgment"] ). Thus, the affidavits of James V. Onorato, submitted on behalf of

the MDI defendants, and the defendant Cohen have not been considered by the Court.

Since, as of the time of making these motions, there have been no Answers filed in this case, issue has not been joined and the pleadings are not "closed". Therefore, the Court will not entertain a motion under Fed.R.Civ.P. 12(c) at this time and will only address the motions made pursuant to Fed.R.Civ.P. 12(b).

## DISCUSSION

### Failure to State a Claim—Fed.R.Civ.P. 12(b)(6)

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" (Goldman v. Belden, 754 F.2d 1059, 1065 [2d Cir.1985] [quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)]; see also Branum v. Clark, 927 F.2d 698 [2d Cir.1991]). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient" (Goldman, supra, 754 F.2d at p. 1067).

In assessing the sufficiency of a pleading on a motion to dismiss, it is well settled that the court must accept the allegations of the complaint as true (see LaBounty v. Adler, 933 F.2d 121, 123 [2d Cir.1991]; Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc., 879 F.2d 10, 14 [2d Cir.1989], cert. denied, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990)), and must construe all reasonable inferences in favor of the plaintiff (See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]; Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1099 [2d Cir.1988], cert. denied, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989]).

The Court is also mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8[a][2]), and that "[a]ll pleadings shall be so construed as to do substantial justice" (Fed.R.Civ.P. 8[f]). It is within this framework that the Court addresses each cause of action.

### First Cause of Action
### Worker Adjustment and Retraining Notification Act of 1988

In the first cause of action, the plaintiffs allege that the defendants are liable for damages under WARN (29 U.S.C. § 2101–2109). The WARN provision at issue reads:

"An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order

(1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and

(2) to the State dislocated worker unit ... and the chief elected official of the unit of local government within which such closing or layoff is to occur" (29 U.S.C. § 2102[a]).

Further, WARN authorizes the Secretary of Labor to promulgate regulations necessary to carry out its provisions (See 29 U.S.C. § 2107[a]). The exclusive remedy for any violation of WARN is a civil action for damages (See 29 U.S.C. § 2104[b]; see also Local 217 v. MHM, Inc., 976 F.2d 805, 807–08 [2d Cir.1992]). Any action pursuant to this statute would fail to state a claim upon which relief can be granted if the action is barred by the applicable statute of limitations.

### WARN Statute of Limitations

■ The defendants United and Scherer contend that the present action is time barred. While the WARN Act does not expressly provide a statute of limitations, these defendants contend that the Court should apply the six month statute of limitations period contained in the National

Labor Relations Act ("NLRA") (*See* 29 U.S.C. § 160[b]). The plaintiffs assert that in the absence of a statute of limitations expressly set forth in the WARN statute, the Court should apply the relevant New York State statute of limitations which the plaintiffs claim is six years in a situation in which no statute of limitations is set forth in the statute (*See* C.P.L.R. 213[1]).

The general rule applied by federal courts when Congress fails to provide a specific statute of limitations period is to "borrow" the most closely analogous state statute of limitations (*See DelCostello v. Teamsters*, 462 U.S. 151, 158–59, 103 S.Ct. 2281, 2287–88, 76 L.Ed.2d 476 [1983]; *see also Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1208–09 [10th Cir.1990] [state limitations period applied to ERISA claim]).

Recently, in addressing a situation in which a statute of limitations was not specifically provided by federal statute, the Supreme Court altered the general rule and instead of looking to an analogous state statute of limitations, the Court utilized an analogous federal statute of limitations period (*See Lampf, Pleva, Lipkind, Prupis & Petrigrow v. Gilbertson*, —— U.S. ——, —— – ——, 111 S.Ct. 2773, 2777–79, 115 L.Ed.2d 321 [1991]). In *Lampf* the Court stated that a federal statute of limitations period should be utilized, in lieu of a state limitations period, "when the operation of a state limitations period would frustrate the policies embraced by the federal enactment" (*Id.* —— U.S. at p. ——, 111 S.Ct. at p. 2288). In this respect, the Supreme Court noted that

"[F]ederal borrowing [is] 'a closely circumscribed exception' to be made 'only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking"'" (*Lampf, supra,* —— U.S. at p. ——, 111 S.Ct. at p. 2288 [*quoting DelCostello, supra,* 462 U.S. at p. 172, 103 S.Ct. at p. 2294]).

The Second Circuit has followed this lead in determining that it is appropriate to borrow a federal statute of limitations when

"(1) a federal rule of limitations clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation 'a significantly more appropriate vehicle for interstitial lawmaking'" (*Phelan v. Local 305*, 973 F.2d 1050, 1058 [2d Cir.1992] [*quoting DelCostello, supra,* 462 U.S. at p. 172, 103 S.Ct. at p. 2294]; *see also Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1033–36 [2d Cir.], *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 [1992]).

An additional benefit of utilizing a federal statute of limitations is to provide a uniform federal limitation period (*See Ceres Partners v. Gel Assocs.*, 918 F.2d 349, 357 [2d Cir.1990]). When addressing cases within the field of labor law, the Second Circuit recognizes that since there is a lack of uniformity in statutes of limitation, "we analyze each labor case on its facts before choosing which limitations period to borrow" (*Phelan, supra,* 973 F.2d at pp. 1058–59).

The Court recognizes that in some labor law cases courts do apply state statutes of limitation. In addressing a labor dispute where there was no express statute of limitations, the Supreme Court held that in an action for damages based upon the breach of a collective bargaining agreement, the state statute of limitations for breach of contract was most closely analogous (*See International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705–07, 86 S.Ct. 1107, 1113–14, 16 L.Ed.2d 192 [1966]). More recently, the Supreme Court examined a situation involving Title I of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") which codifies the principle that union members should be permitted to "speak their minds without fear of reprisal" (*Reed v. United Transp. Union*, 488 U.S. 319, 325–30, 109 S.Ct. 621, 626–29, 102 L.Ed.2d 665 (1989)). The Court found that since the Title I provision was more closely related to First Amendment guarantees than collective bargaining, the six

month statute of limitations under the NLRA was inappropriate and the Court applied North Carolina's three year personal injury statute of limitations (*Id.*).

In a claim under section 303 of the Labor Management Relations Act ("LMRA"), which confers a right of action "upon any person 'injured in his business or property' as a result of secondary boycott activities" the Second Circuit determined that the proper statute of limitations was one under state tort law (*See Monarch Long Beach Corp. v. Soft Drink Workers*, 762 F.2d 228, 230–31 [2d Cir.], *cert. denied*, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 [1985]).

In other labor situations courts have applied an analogous federal statute of limitations. In a situation involving claims instituted by discharged employees against: (1) the union for breach of the union's duty of fair representation, and (2) their employers for breach of the collective bargaining agreement, the Supreme Court applied a federal statute of limitations to all of the causes of action (*DelCostello, supra*, 462 U.S. at pp. 164–65, 103 S.Ct. at p. 2290–91). The Court termed that factual situation a "hybrid" since in order "[t]o prevail against either the company or the Union ... [the employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union" (*Id.*). In such a "hybrid" situation the Court determined that there were no closely analogous state statutes. Therefore, the Court applied the NLRA six month statute of limitations because the Court believed it was the most closely analogous (*DelCostello, supra*, 462 U.S. at pp. 170–72, 103 S.Ct. at p. 2293–94, *see also Marshall v. Local Union No. 6*, 960 F.2d 1360, 1367 [8th Cir.1992] [applying six month statute of limitations in a "hybrid" situation]).

In addressing the applicability of federal statutes of limitations in labor disputes, the Second Circuit stated that it "borrow[s] state limitations periods where ... claims 'are asserted ... against the union and concern disruption of internal union democracy'" (*Phelan, supra*, 973 F.2d at p. 1060 [*quoting Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 976 (1987)]) and that it "borrow[s] ... [the NLRA six month] limitations period where claims ... [implicate] the collective bargaining relationship, even in the non-hybrid context" (*Id.; see also Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 412–13 [5th Cir.] [six month limitations period applies to "claims against the employer and those against the union"], *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 [1990]).

It appears that the thrust of the Second Circuit cases is that although the Supreme Court's decision in *DelCostello* was an exception to the general rule requiring courts to utilize state statutes of limitation, courts should not limit the *DelCostello* reasoning to its specific facts (*See Phelan, supra*, 973 F.2d at p. 1060). In *Assoc. Brick Mason Contractors v. Harrington*, 820 F.2d 31, 37 (2d Cir.1987), the Court applied the NLRA six month statute of limitations to actions to compel a labor arbitration commended under LMRA section 301 (*Id.; see also U.S. Postal Serv. v. American Postal Workers Union*, 893 F.2d 1117, 1122 [9th Cir.] [the six month limitation period was applied to labor arbitration proceeding], *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 42 [1990]; *Communications Workers of America v. Western Elec.*, 860 F.2d 1137, 1140–41 [1st Cir.1988] [same]).

Other circuits apparently have reached the same conclusion. The Fifth Circuit applied the NLRA six month statute of limitations to an action commenced pursuant to the Railway Labor Act ("RLA") since the policies and interests "articulated" in *DelCostello* applied to the situation under the RLA (*See Trial v. Atchison, Topeka & Santa Fe Railway Co.*, 896 F.2d 120, 124 [5th Cir.1990] [*citing Brock v. Republic Airlines, Inc.*, 776 F.2d 523, 526 (5th Cir. 1985)]). In a Sixth Circuit case applying the NLRA statute of limitations to an action brought pursuant to the RLA the court stated that the "same principles and rationale logically follow under each Act dealing [with] ... employer-employee relations" (*Bailey v. Chesapeake & Ohio Railway Co.*, 852 F.2d 185, 186 [6th Cir.1988]).

In the present case, the claim does not involve an internal union dispute, but rather a dispute between a union, on behalf of the employees, and the employers, to recover damages for failure to give the required notice of the closing of the Melville Plant. The policy behind the NLRA is to alleviate turmoil in the relationship between management and labor so that disputes do not limit the flow of interstate commerce (*See* 29 U.S.C. § 141[b]). The NLRA accomplishes this goal by creating a forum through which labor-management disputes may be resolved (*See* 29 U.S.C. § 160). The Second Circuit has recognized that, although the determination is fact specific, the Court would probably apply the six month statute of limitations contained in the NLRA to situations which implicate the collective bargaining relationship (*See Phelan, supra,* 973 F.2d at p. 1060). The Supreme Court has recognized that, although unions do not have to take part in the actual decision to shut down a business, a notice of such closing is a part of the collective bargaining process (*See First National Maintenance Corp. v. N.L.R.B.,* 452 U.S. 666, 681–86, 101 S.Ct. 2573, 2582–84, 69 L.Ed.2d 318 [1981]).

It appears that the Second Circuit has not squarely dealt with the determination of the applicable statute of limitations in a WARN action. It has, however, utilized the Supreme Court's decision in *DelCostello* to determine that there are circumstances in which a federal court should utilize the shorter NLRA statute of limitations (*See. e.g., Phelan, supra,* 973 F.2d at p. 1060 [duty of fair union representation]; *Assoc. Brick, supra,* 820 F.2d at 37 [application to a labor arbitration situation]). It was determined that these situations dealt with an employer and employee relationship and therefore it was appropriate to utilize the "collective bargaining" statute of limitations.

The Court recognizes that "[t]he selection of a limitations period is an exercise of the court's discretionary power to fashion appropriate measures to carry out the intent of the federal legislation" (*Robinson v. Pan American World Airways, Inc.,* 777 F.2d 84, 86 [2d Cir.1985]). In addition, as previously stated, it is the apparent thinking of the Second Circuit that the *Del-Costello* reasoning should not be limited to the specific facts contained in that case but could be appropriately applied to other factual situations involving labor disputes (*See Phelan, supra,* 973 F.2d at p. 1060).

Given the fact that courts have applied the NLRA six month statute of limitations to labor disputes outside the National Labor Relations Act, but related to labor relations (*See, e.g., Phelan, supra,* 973 F.2d at p. 1060 [Second Circuit—duty of fair union representation]; *Assoc. Brick, supra,* 820 F.2d at 37 [Second Circuit—application to labor arbitration situation]; *see also Trial, supra,* 896 F.2d at 124 [Fifth Circuit—Railway Labor Act]; *U.S. Postal Serv., supra,* 893 F.2d at 1122 [Ninth Circuit—labor arbitration proceeding]; *Western Elec., supra,* 860 F.2d at 1140–41 [First Circuit—labor arbitration proceeding]) it is the Court's view that the six month NLRA statute of limitations should be applied to a claim under WARN.

The relationship between WARN and the NLRA is strengthened by a review of the WARN regulations. In particular the term "representative" is defined by a WARN regulation as "an exclusive representative of employees within the meaning of section 9(a) or 8(f) of the National Labor Relations Act or section 2 of the Railway Labor Act" (20 C.F.R. § 639.3[4][d]). Given the additional fact that courts have utilized the NLRA statute of limitations in Railway Labor Act cases (*see, e.g., Trial, supra,* 896 F.2d at p. 124 [Fifth Circuit]) it would appear that the same rationale would support the application of the same statute of limitations to a cause of action under WARN.

In interpreting the one year limitations period contained within the Trade Act of 1974 (19 U.S.C. § 2101–2487), the Ninth Circuit determined that the statutory intent was to provide workers with assistance in adjusting to a new job and not to supplement unemployment benefits (*Lloyd v. U.S. Department of Labor,* 637 F.2d 1267, 1271 [9th Cir.1980]). In following this determi-

nation of intent the Ninth Circuit stated that

> "[i]n order to serve the Act's purposes of retraining, adjustment, and relocation, it was important that workers claim and receive benefits promptly after discharge ... Thus, when workers fail to apply timely for benefits and are so not eligible, it is not that they are being penalized for failure to file; rather they simply are so [sic] longer within the category Congress intended to aid by this program" (*Id.* at pp. 1270–71).

Further, since the WARN statute only provides a limited compensatory damage remedy, the equivalent of sixty (60) days salary, this additional factor weighs in favor of the application of the short NLRA six month statute of limitations to this statute.

Since the Melville Plant was closed on or about January 23, 1991 and the complaint was filed on or about January 31, 1992, over one year later, the first cause of action is barred by the six month statute of limitations contained in the NLRA (29 U.S.C. § 160[b]).

The Court must now turns to the legal sufficiency of the second and third causes of action.

### Second and Third Causes of Action

*Liability of MDI Corp. under the NMDU/Imperial Collective Bargaining Agreement*

■ The complaint alleges that MDI Corp. is liable under the NMDU/Imperial collective bargaining agreement for the contributions due to the union's Welfare and Pension Funds by Imperial. For MDI Corp. to be responsible for Imperial's contribution under the agreement, the plaintiffs must show that MDI is a "successor" of Imperial (*See Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5 [2d Cir.1978]). To be considered a "successor", there must be "substantial continuity of identity in the business enterprise before and after a change" (*Id.* at pp. 5–6 [*quoting Howard Johnson Co. v. Detroit Local Joint Exec. Board*, 417 U.S. 249, 263, 94 S.Ct. 2236, 2244, 41 L.Ed.2d 46 (1974)]).

■ The complaint alleges facts which purport to show that MDI Corp. was Imperial's "successor" and as such liable under the NMDU/Imperial collective bargaining agreement. Among other things, the complaint alleges that MDI Corp. purchased a substantial amount of the assets of Imperial including Imperial's inventory; that MDI Corp. may have hired a majority of Imperial's former employees; and that "all of the Periodicals formerly distributed by Imperial were, thereafter, delivered from the Hicksville Warehouse by use of the trucks, machinery and equipment that had formerly been used by the Aggrieved Employees at the Melville Plant" (Complaint, at ¶¶ 17–18).

The Court finds that the Complaint alleges facts which, if true, could lead to a finding that MDI Corp. was Imperial's "successor" and thus liable under the NMDU/Imperial collective bargaining agreement (*See Scheuer, supra,* 416 U.S. at p. 236, 94 S.Ct. at p. 1686). Therefore, the second cause of action states a cause of action and the motion to dismiss is denied as to MDI Corp.

### Applicability of ERISA to Officers

■ The breach of an agreement made pursuant to ERISA may confer liability on a corporate officer. The Second Circuit has stated that "at least to the extent that a controlling corporate official defrauds *or conspires to defraud* a benefit fund of required contributions, the official is individually liable [under ERISA]) (*Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 388 [2d Cir.1989]). The complaint alleges that Scherer and Cohen, as individuals, had knowledge of the failure to contribute to the fund in the second cause of action and the failure to pay the benefits in the third cause of action. Construing all inferences in favor of the plaintiffs, as this Court must, the second and third causes of action do state a claim for damages under ERISA against individuals (*See Scheuer, supra,* 416 U.S. at p. 236, 94 S.Ct. at p. 1686).

Having found that the second and third causes of action should survive the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must now determine

whether these remaining causes of action should be dismissed pursuant to Fed. R.Civ.P. 12(b)(7) for failure to join an indispensable party.

*Failure to Join an Indispensable Party*

■ A motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(7), is appropriate when the plaintiff "fail[s] to join a party under Rule 19" (*Id.*). In *Associated Dry Goods v. Tower Financial Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990), in addressing a motion pursuant to Fed.R.Civ.P. 12(b)(7), the Second Circuit stated that the district court must first make a threshold determination about whether the party at issue should be joined in the action according to Fed. R.Civ.P. 19(a) as a necessary party (*Id.*). Such a determination is within the sound discretion of the district court (*See Arkwright–Boston Mfrs. Mutual v. City of New York*, 762 F.2d 205, 209 [2d Cir. 1985]).

Fed.R.Civ.P. 19(a) states, that:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring multiple, or otherwise inconsistent obligations by reason of the claimed interest" (*Id.*).

The defendants contend that the failure to join Imperial as a party in the action requires that the entire complaint be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) since full relief cannot be granted in Imperial's absence. This threshold determination by the Court must be based upon "the pleadings as they appear at the time of the proposed joinder" (*Associated Dry Goods, supra,* 920 F.2d at 1124).

Although the complaint states that Imperial sold its assets to MDI Corp. and that MDI Corp. was "a successor of Imperial's business enterprise" (Complaint, at ¶ 9), there is no request for relief from Imperial itself. In addition, no answer has as yet been filed. Given the fact that the "pleadings as they appear at the time of the proposed joinder" do not seek any relief against Imperial, the Court finds that the second and third causes of action should not be dismissed for failure to join Imperial as an indispensable party (*See Arkwright, supra,* 762 F.2d at pp. 208–09).

## CONCLUSIONS

Based upon the forgoing, the Court makes the following determinations:

1) The motion to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), is denied;

2) The motion to dismiss the first cause of action, pursuant to Fed.R.Civ.P. 12(b)(6), is granted;

3) The motion to dismiss the second and third causes of action, pursuant to Fed. R.Civ.P. 12(b)(6), is denied;

4) The motion to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(7), is denied; and

5) The motion to dismiss the Complaint on the pleadings, pursuant to Fed.R.Civ.P. 12(c), is denied.

SO ORDERED.