**Larry JOHNSON, et al.,**
**Plaintiffs–Appellees,**

v.

**GRAPHIC COMMUNICATIONS INTER-NATIONAL UNION and Graphic Communications Union Local 303, Defendants–Appellants.**

No. 89–3085.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1990.

Decided April 19, 1991.

David D. Haynes, Terre Haute, Ind., for plaintiffs-appellees.

Barry A. Macey, Segal & Macey, Fred O. Towe, Jr., Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind., Sandra L. Hughes, O'Donnell, Schwartz & Anderson, Washington, D.C., for defendants-appellants.

Before BAUER, Chief Judge, COFFEY, and KANNE, Circuit Judges.

BAUER, Chief Judge.

Larry Johnson and other former employees of the Moore Langen Printing Company of Terre Haute, Indiana ("Plaintiffs") think that their union gave them a raw deal. In November 1983, the collective bargaining agreement between Moore Langen and Graphic Communications Union Local 303 of the Graphic Communications International Union ("Defendants" or collectively, the "Union") expired, and negotiations for a new contract had begun. When the following April rolled around, the parties still had not come to an accord, so the Union leadership decided to call a strike. Johnson and his coworkers joined in a work stoppage on April 16, 1984. Trouble was, the Union did not give Moore Langen proper notice of the strike as required by section 8(d) of the National Labor Relations Act. 29 U.S.C. § 158(d) (1947) ("NLRA"). Because the Union failed to take all legally required action to allow a work stoppage, the strike was unlawful and, therefore, the employees' conduct was unprotected. As a result of having participated in an illegal work action, Johnson and his coworkers were fired.

■ Nearly two years later, on April 15, 1986, Johnson and the other former employees of Moore Langen filed a complaint in federal district court pursuant to section 301 of the Labor–Management Act of 1947, 29 U.S.C. § 185, which provides federal jurisdiction for suits by employees against their union for unfair or discriminatory treatment. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Lewis v. Local Union No. 100 of Laborers' International Union*, 750 F.2d 1368 (7th Cir.1984). The complaint portrayed Union officers and business agents as having "held themselves out to be experts in representation, collective bargaining and, particularly, the required legal procedures and prerequisites for work stoppages and strikes." The Plaintiffs alleged that Union officials' fraudulent misrepresentations that the Union had satisfied all legal prerequisites before engaging in strike activity induced the employees to join the work stoppage, causing the employees to lose their jobs and pension, insurance, and vacation benefits.

The local and international branches of the Union filed motions to dismiss on the grounds that the complaint was time-barred. The Union argued that because the conduct that gave rise to the cause of action occurred on April 15, 1984, the Plaintiffs had failed to comply with the six-month statute of limitations imposed on duty of fair representation cases pursuant to section 10(b) of the NLRA. 29 U.S.C. § 160. On April 4, 1989, the district court denied the Union's motions to dismiss on the grounds that the two-year Indiana legal malpractice limitations period applied, rather than the six-month section 10(b) limitations period. On May 1, 1989, Defendants filed a Joint Petition for Certification for an Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b), which allows for such appeals if there is "a controlling question of law as to which there is substantial ground for difference of opinion" and an immediate appeal "may materially advance the ultimate termination of the litigation...." We granted the Petition in order to determine which statute of limitations applies. This question has arisen because section 301 of the Labor Management Relations Act does not contain an express time limitation.

■ When a federal statute is silent on the proper limitations period, federal courts determine the timeliness of a suit by reference to an appropriate statute of limitations, the best choice being the most closely analogous time limitation under state law. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985).

The selection process is accomplished by characterizing a federal cause of action on the basis of the particular facts and legal theories involved in the action and then picking a state limitations period that best approximates the characterization. This "mix and match" game is not very easy to play. "State legislatures do not devise their limitations periods with national interests in mind...." *Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). Judge Posner has lamented that "[b]orrowing a period of limitations from one statute to use with another that doesn't have its own limitations provision is a matter of which round peg to stuff in a square hole." *Short v. Belleville Shoe*, 908 F.2d 1385, 1393 (7th Cir.1990) (Posner, J., concurring).

For example, despite the fact that the Supreme Court has acknowledged that the subject matter of section 301 is "peculiarly one that calls for uniform law," *Teamsters v. Lucas Flour*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962) (citations omitted), the Court refused to apply a federal statute of limitations to a section 301 suit for an employer's breach of a collective bargaining agreement and instead used Indiana's six-year limitations period for actions on unwritten contracts. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). *Accord International Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222 (7th Cir.1986) (state statute of limitations governing common law action for breach of contract provides a closer analogy than federal law for a union's section 301 action alleging that the employer violated the collective bargaining agreement by failing to pay employees contractual wage rate). In *Hoosier Cardinal*, the Court concluded that the Indiana limitations period was a better "match" because the case did not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it." 383 U.S. at 702, 86 S.Ct. at 1111. Furthermore, the subject matter of *Hoosier Cardinal*—the

termination of employees covered by a collective bargaining agreement without payment of accumulated vacation pay—was closely analogous to an ordinary breach of contract suit. In opting for the state statute of limitations, the Court was careful to note that it was not deciding the appropriate time limits for all cases brought under section 301. It declined to predict how it would rule when the analogy between the federal and state actions was not as obvious or close. *Id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7.

The picture changed significantly after *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and *Agency Holding Corp. v. Malley–Duff & Assoc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). In both cases, the Supreme Court decided that federal rather than state law supplies the missing period of limitations. *Agency Holding* departed from traditional "borrowing" by applying the four-year period of limitations in the antitrust laws to suits under RICO. While acknowledging that "the mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations," 483 U.S. at 147, 107 S.Ct. at 2762, the Court conceded that the statute of limitations in the Clayton Act offered "a far closer analogy to RICO than any state law alternative." *Id.* at 150, 107 S.Ct. at 2764. Moreover, a uniform statute of limitations was required to avoid "uncertainty and time-consuming litigation." *Id.* (quoting *Wilson v. Garcia*, 471 U.S. at 272, 105 S.Ct. at 1945).

*DelCostello* involved a section 301 action and thus, for our purposes, warrants a closer examination. The lawsuit in *DelCostello* was a "hybrid" section 301 action against both the employer for violation of the collective bargaining agreement and the union for breach of the duty of fair representation. The Court determined that a federal statute of limitations—the six-month limitations period of section 10(b) of the NLRA—was more closely analogous to the lawsuit than any of the suggested state law counterparts. Although emphasizing

that borrowing state limitations remained the "norm" whenever state law provided a perfect analogy, the Court indicated that it would not hesitate to turn away from state law "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking...." 462 U.S. at 172, 103 S.Ct. at 2294. *See also Reed v. United Transportation Union*, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). The suggested state limitation in *DelCostello* was too short to enable the aggrieved employees to vindicate their rights. Also, because *DelCostello* was a hybrid claim, the actions against the employer and the union were inextricably linked so that it would be impractical to establish different statutes of limitation for each half of the suit.

*DelCostello* resolved the question of which statute of limitations applies in hybrid section 301 actions. Left open, however, was the applicability of the six-month limitations period to "pure" section 301 actions; that is, straightforward suits against the employer alleging a breach of the collective bargaining agreement or straight unfair representation claims against unions. Even though *DelCostello* refused to overturn *Hoosier Cardinal*, a footnote in the decision implies that the limitations period in section 10(b) of the NLRA should be applied to pure section 301 claims: "[E]ven if this action were considered as arising solely under § 301 ... the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the latter rule." 462 U.S. at 158–59 n. 12, 103 S.Ct. at 2287 n. 12. In *Erkins v. United Steelworkers*, 723 F.2d 837 (11th Cir.), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984), the Eleventh Circuit adopted the federal statute of limitations in a section 301 case involving a breach of the duty of fair representation. The court reasoned that because unfair representation claims also are unfair labor practices, the six-month period from section 10(b) applies.

This circuit has been "properly circumspect" about applying the federal statute of limitations to nonhybrid section 301 suits. *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 177 (7th Cir.1987) (collecting cases for and against application of the six-month rule to pure section 301 suits brought by a union to compel an employer to arbitrate a grievance). First, we look to see if federal law provides a more closely analogous limitations period than any state statute. Second, we choose a federal limitations period if federal policies and the practicalities of litigation make that statute of limitations more appropriate. *Plumbers Pension Fund, Local 130 v. Domas Mechanical Contractors*, 778 F.2d 1266, 1268–70 (7th Cir.1985).

A comparison of Plaintiffs' complaint to an unfair labor practice claim for breach of the duty of fair representation convinces us that the two are not just closely analogous, but identical. The duty of fair representation arises from the union's exclusive right to represent all bargaining unit members in their dealing with the employer. *Vaca*, 386 U.S. at 182, 87 S.Ct. at 912. A union commits an unfair labor practice under section 8(b) of the NLRA when its conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. On May 29, 1984, the Plaintiffs filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") alleging that the Union violated section 8(b)(1)(A) of the NLRA. The basis of the charge was that

> [o]ur local went on strike on April 16, 1984 after we were assured by union officials that all the proper procedures had been followed. Our strike ended on April 19, 1984 after it was determined to be "illegal" because the union failed to provide the company with proper notice. All the strikers were replaced and most are currently on lay-off status, although some have been replaced. The union was negligent in its conduct and failed to properly represent us.

Only after the NLRB dismissed the charge on July 20, 1984, did the Plaintiffs file their

suit in federal court at the eleventh hour. They alleged that the Union failed to take "all legally required action to allow a work stoppage," and that as a consequence of this failure, the strike was unprotected and the Plaintiffs were terminated. The Plaintiffs alleged that the Union had "assumed the duty to perform all prerequisites to a work stoppage" and that as a result of the Union's failure to perform this duty, Plaintiffs lost their employment and suffered other damages. The Plaintiffs claimed further that the Union "acted intentionally, arbitrarily, in bad faith, and with a heedless disregard to the consequences to Plaintiffs, and that their actions amounted to fraudulent conduct."

Although the failed unfair labor practice charge was dressed up for purposes of the federal suit, the conduct complained of was the same. In the language of *DelCostello*, "all breaches of a union's duty of fair representation *are* in fact unfair labor practices.... [And even if they are not], the family resemblance is undeniable, and indeed there is substantial overlap." 462 U.S. at 170, 103 S.Ct. at 2293–94 (emphasis in original). The timeliness of an unfair representation suit is governed by federal law, *Vaca*, 386 U.S. at 177, 87 S.Ct. at 909, and we may adopt a federal statute of limitations when, as here, the claim is identical to one expressly governed by a federal statute and the only other available choice is a less analogous state statute of limitations governing a lawyer's negligence in allowing time to run out on a client's valid claim.

Policy considerations also militate in favor of applying the federal time limitation. Plaintiffs argue that the policies warranting application of the 10(b) limitations period in a hybrid case such as *DelCostello* are not present here. They contend that the interest in prompt resolution of labor disputes is nonexistent because the employment relationship ceased between the discharged strikers and Moore Langen and there was no need to be concerned with the formation of the agreement and the private settlement of disputes under it. We disagree. Contrary to Plaintiffs' assertions, federal policies and the practicalities of litigation make the six-month statute of limitations "a significantly more appropriate vehicle for interstitial lawmaking" than a two-year rule borrowed from state law. *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294. *See also Eatz v. DME Unit of Local Union Number 3 of the International Brotherhood of Electrical Workers*, 794 F.2d 29, 33 (2d Cir.1986) (holding that the six-month rule applies to an unfair representation claim standing alone). The elements Congress balanced when it fashioned the limitations period of section 10(b) are the same elements to be balanced in this case. The six-month limitations period in section 10(b) was adopted in order to "bar litigation over past events 'after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused.'" *Local Lodge No. 1424 v. National Labor Relations Board*, 362 U.S. 411, 419, 80 S.Ct. 822, 828, 4 L.Ed.2d 832 (1960) (quoting H.R.Rep. No. 245, 80th Cong., 1st Sess., p. 40). *See also Hall v. Printing and Graphic Arts Union, Local 3*, 696 F.2d 494, 499 (7th Cir.1982). The period also was selected "to forestall the accumulation of back pay claims." 1947 U.S.Code Cong. & Admin.News 1135, 1159.

Furthermore, the six-month rule avoids the uncertainty associated with courts searching for more or less analogous state statutes. When courts are forced to conduct such case-by-case searches, "[p]laintiffs may be denied their just remedy if they delay in filing their claims, having wrongly postulated that the courts would apply a longer statute. Defendants cannot calculate their contingent liabilities, not knowing with confidence when their delicts lie in repose." *Wilson v. Garcia*, 471 U.S. at 275 n. 34, 105 S.Ct. at 1946 n. 34. It was the uncertainty factor that led the Court in *Agency Holding* to conclude that a uniform federal statute of limitations was needed for civil RICO claims. Citing the lower court opinion, the Court observed that even a "garden variety" business dispute could be characterized any number of ways, thus calling into play "a multiplicity of applicable limitations periods." 483 U.S. at 149,

107 S.Ct. at 2764. Similarly, a breach of the duty of fair representation might be analogized to numerous causes of action, including fraud, breach of contract, tortious interference, or, as in this case, legal malpractice. Although involving the same species of conduct, different claims may be subject to varying periods of limitations and tolling doctrines, resulting in "the essential condition for standardless, discretionary judgment." *Belleville Shoe*, 908 F.2d at 1394 (Posner, J., concurring).

The situation should improve slightly because of the Federal Courts Study Implementation Act of 1990, Pub.L. No. 101–650, title III, 104 Stat. 5089 (1990), which provides that civil actions arising under statutes enacted after December 1, 1990 (the date of enactment of the Act) "may not be commenced later than 4 years after the cause of action accrues." At the present, however, we are faced with great uncertainty and lack of uniformity. In *Belleville Shoe*, we expressed our displeasure with a scheme that has led to a good deal of wasteful litigation. Acting on our belief that using a crazy quilt of state statutes to supply missing periods of limitations in securities cases was inconsistent with the overall fabric of the securities statutes, we held that federal and not state law supplies the missing statute of limitations in suits arising under section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5). 908 F.2d at 1389. The same protest should be voiced when a less-than-analogous state statute is inconsistent with federal labor policy. The problematic application of state statutes of limitations "might have to be tolerated if state law were the only source reasonably available for borrowing...." *DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293. But when "we have available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here ...," *id.*, the federal statute is more fitting than an approximation drawn from state law.

Our decision should not be read as a departure from the mandates of *Hoosier Cardinal* and *DelCostello:* state law should be resorted to in most cases. But when a section 301 suit provides a perfect parallel to an unfair labor practice, and when the same federal policies are at stake in both actions, the federal limitations period is significantly more appropriate. The decision of the district court, then, is RE-VERSED and REMANDED with instructions to dismiss the action as untimely. The six-month NLRA statute of limitations, rather than the two-year Indiana statute of limitations for legal malpractice, should apply.