**AUTOMOBILE MECHANICS' LOCAL NO. 701 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**SANTA FE TERMINAL SERVICES, INC. and Atchison, Topeka & Santa Fe Railroad Company, both Delaware corporations, Defendants.**

No. 92 C 1162.

United States District Court, N.D. Illinois, E.D.

May 3, 1993.

Stephen Bernard Horwitz, Thomas Joseph Angell, Jacobs, Burns, Sugarman & Orlove, Vincent Dominick Pinelli, Edward J. Burke, Burke, Burns, Ellison & Pinelli, Ltd., Chicago, IL, for plaintiff.

James Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Lee P. Schafer,

Chicago, IL, Guy Vitello, Atchison, Topeka and Santa Fe Railway Co., Law Dept., Schaumberg, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

On February 14, 1992, plaintiff Automobile Mechanics' Local 701 of the International Association of Machinists and Aerospace Workers filed this action on behalf of its members. Plaintiff complains that defendants Santa Fe Terminal Services, Inc. and the Atchison, Topeka and Santa Fe Railway Company laid off or terminated the employment of plaintiff's members without giving 60 days' notification as required by the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101–09. The layoff allegedly occurred on February 16, 1991. Defendants' Fifth Affirmative Defense is that this suit is barred because filed beyond the applicable statute of limitations. Presently pending is plaintiff's motion to strike the Fifth Affirmative Defense.

Under WARN, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a).[1] A "plant closing" is the permanent or temporary shutdown of a single site of employment which results in an employment loss to a certain minimum number of employees. *Id.* § 2101(a)(2). A "mass layoff" is a reduction in force that is not a result of a plant closing and which results in an employment loss to a certain minimum number of employees. *Id.* § 2101(a)(3). An employer who orders a plant closing or mass layoff without giving proper notice shall be liable to employees suffering an employment loss for backpay and lost benefits for each day of violation up to 60 days. *Id.*

§ 2104(a)(1). "[T]he term 'employment loss' means (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." *Id.* § 2101(a)(6). A termination immediately qualifies as an employment loss (*id.* § 2101(a)(6)(A)), but a layoff must last for more than six months to qualify as an employment loss (*id.* § 2101(a)(6)(B)). *Kildea v. Electro Wire Products, Inc.,* 775 F.Supp. 1014, 1019 (E.D.Mich.1991); *Jones v. Kayser–Roth Hosiery, Inc.,* 748 F.Supp. 1276, 1284 (E.D.Tenn.1990). An employment loss is a necessary element of a damages claim under WARN.

WARN provides for civil actions for damages in federal court.[2] *Id.* § 2104. However, the Act contains no express statute of limitations. With respect to the statute of limitations defense, the parties raise two issues. First, they disagree as to what limitation period should be borrowed for WARN actions. Defendants contend that the six-month limitation period of § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), should be borrowed. Plaintiff contends a limitation period should be borrowed from state law, either the 10–year period for written contracts (735 ILCS 5/13–206), the five-year limitation period for oral contracts (735 ILCS 5/13–205), or the five-year catchall provision (735 ILCS 5/13–205). Alternatively, plaintiff argues the federal four-year catchall provision (28 U.S.C. § 1658) should apply. The parties' other point of disagreement is when a WARN claim accrues. Defendants contend it accrues at the time the employees are first laid off and when it first becomes apparent that the layoff will last for more than six months. Plaintiff contends that there is no accrual for

---

1. Whether plaintiff has adequately alleged a claim under WARN is not in dispute. While the provisions of WARN are pertinent to today's decision, qualifications and other details that are not pertinent are omitted.

2. "The remedies provided for in this section shall be the exclusive remedies for any violation of this chapter. Under this chapter, a Federal court shall not have authority to enjoin a plant closing or mass layoff." 29 U.S.C. § 2104(b). It has been held that the damages remedies and civil penalties provided for in § 2104 are the only

possible remedies that may be obtained under WARN. *Local 217, Hotel & Restaurant Employees Union v. MHM, Inc.,* 976 F.2d 805, 808–09 (2d Cir.1992). *Contra Local 397, International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL–CIO v. Midwest Fasteners, Inc.,* 763 F.Supp. 78 (D.N.J.1990) (cannot enjoin layoff or plant closing, but court has authority to grant injunctive relief on other issues). In the present case, only damages remedies are claimed.

a layoff until the layoff has lasted more than six months and qualifies as an employment loss. This lawsuit was filed just under 12 months after the alleged termination or layoff. The statute of limitations defense can only succeed if (1) the six-month limitation period applies *and* (2) the claim accrues (a) at the time of the layoff or (b) when it first becomes apparent that the layoff will last for more than six months.

■ The accrual issue will be considered first. Plaintiff pleads in the alternative. It pleads that a plant closing occurred and alternatively pleads that a mass layoff occurred. Defendants mistakenly distinguish between a plant closing and mass layoff on the basis that the former is a termination of employment while the latter includes the possibility of a recall. That is not how the statute distinguishes the two. Under the statute, the primary distinction is that a plant closing involves the shutting down of an entire site (or an entire facility or operating unit within a single site),[3] whereas a mass layoff involves the termination or layoff of less than an entire site involving a certain minimum percentage and/or number of employees.[4] Under the statute a plant closing can be "permanent or *temporary.*" 29 U.S.C. § 2101(a)(2). Both plant closings and mass layoffs are defined as having to involve employment losses. Since employment losses are defined as being either a termination (*id.* § 2101(a)(6)(A)) or a layoff exceeding six months (*id.* § 2101(a)(6)(B)), both plant closings and mass layoffs can involve terminations or layoffs. Such a conclusion is also consistent with the regulations promulgated by the Secretary of Labor. The definition of plant closing reads in part: "A 'temporary shutdown' triggers the notice requirement only if there are a sufficient number of terminations, layoffs exceeding 6 months, or reductions in hours of work as specified under

the definition of 'employment loss.'" 20 C.F.R. § 639.3(b).

Labeling the action allegedly taken by defendants as a plant closing or mass layoff does not determine whether it involved the termination of employment or a layoff from employment. In the amended complaint plaintiff refers to the employees being "laid off" (Am.Comp. ¶¶ 1, 7) and a "layoff" being caused (*Id.* ¶ 8). It also refers to the "loss" of employees (¶ 8). In its briefs, plaintiff contends a layoff occurred. Defendants contend there was a termination of employment. Whether the action in dispute was a termination of jobs or a layoff cannot be resolved on the pleadings. Plaintiff has pleaded one or both occurred. Defendants can plead in their answer that there was only a termination. Resolution of this factual dispute would have to await summary judgment, a trial, or another appropriate proceeding. In determining whether defendants' statute of limitations defense should be stricken, both of the alternatives must be considered.

A termination results in an immediate employment loss. If the employees' jobs were terminated, their claim accrued on the alleged date of termination, February 16, 1991. If a six-month statute of limitations applies, this lawsuit would (absent tolling)[5] be untimely since not filed until February 14, 1992.

■ The accrual of the claim, however, would be different if a layoff occurred. A necessary element of a damages claim under the statute is an employment loss and there is no employment loss until the layoff continues for more than six months. *See Kildea,* 775 F.Supp. at 1019; *Jones,* 748 F.Supp. at 1284. Therefore, a claim based on a layoff cannot accrue until employees have been laid off for more than six months. Defendants do not contend that the job action in dispute occurred any earlier than February 16, 1991. If that action was a layoff, the WARN claim

---

**3.** It also includes "the effective cessation of production or the work performed by a unit, even if a few employees remain." 20 C.F.R. § 639.3(b).

**4.** A mass layoff requires an employment loss to (a) 33% of the total employees with at least 50 suffering an employment loss or (b) at least 500 employees. 29 U.S.C. § 2101(a)(3)(B).

**5.** At this time, it is unnecessary to determine whether the statute of limitations should be tolled under the circumstances of this case, as plaintiff contends. On the present motion, it is only being determined whether defendants should be permitted to plead a statute of limitations defense, not whether plaintiff's complaint should be dismissed or whether the actual facts support such a defense.

did not accrue until August 16, 1991 at the earliest. Even if a six-month limitation period applies, plaintiff's claim was timely when filed on February 14, 1992. A defense is not available to the extent plaintiff's claim is based on a layoff of employees.

■ Because it is possible that plaintiff's claim is actually based on a termination of employment, it still must be considered what statute of limitations applies. The defense can only be stricken in its entirety if a limitation period of one year or more applies.

Only three cases have considered the appropriate statute of limitations for WARN claims. Two of those cases borrow the six-month limitation period of the NLRA, 29 U.S.C. § 160(b). *See Newspaper & Mail Deliverers' Union of New York & Vicinity v. United Magazine Co.,* 809 F.Supp. 185, 188–92 (E.D.N.Y.1992); *Staudt v. Glastron, Inc.,* 1993 WL 85356 1993 U.S. Dist. LEXIS 3090 (W.D.Tex. Feb. 23, 1993). The other case borrows a six-year limitation period from state contract law. *See Wallace v. Detroit Coke Corp.,* 818 F.Supp. 192, 195–97 (E.D.Mich.1993).

■ The ordinary rule is that, when Congress is silent as to a statute of limitations, the state time limitation most analogous to the case at hand is borrowed. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —, U.S. —, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991). There are exceptions to the general rule, but the general rule is not to be lightly abandoned. *Id.* "[F]ederal borrowing [is] 'a closely circumscribed exception,' to be made 'only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.' " *Id.* (quoting *Reed v. United Transportation Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989)).

A three-step inquiry is to be applied in determining which statute of limitations should be borrowed. First, it must be determined whether a uniform statute of limitations is to be selected. *Lampf,* — U.S. at —, 111 S.Ct. at 2779. If it is determined that a uniform statute of limitations is desirable, it must then be determined whether the source of that standard should be state or federal, with particular weight being accorded to the geographical character of the claim. *Id.* "Finally, even where geographical considerations counsel federal borrowing, the aforementioned presumption of state borrowing requires that an analogous federal source truly affords a 'closer fit' with the cause of action at issue than does any available state-law source. Although considerations pertinent to this determination will necessarily vary depending upon the federal cause of action and the available state and federal analogues, such factors as commonality of purpose and similarity of elements will be relevant." *Id.* The three-step process is a "hierarchical inquiry." *Id.* — U.S. —, 111 S.Ct. at 2778; *Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1033 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992). There is no need to consider each additional step of the inquiry unless the previous step is first found to point to borrowing a federal limitation period. *See Lampf,* — U.S. at —, 111 S.Ct. at 2779.

The Supreme Court has said that: "Where a federal cause of action tends in practice to 'encompass numerous and diverse topics and subtopics,' such that a single state limitations period may not be consistently applied within a jurisdiction, we have concluded that the federal interests in predictability and judicial economy counsel the adoption of one source, or class of sources, for borrowing purposes." *Id.* (quoting *Wilson v. Garcia,* 471 U.S. 261, 273, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985)). For example, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., incorporates a large variety of predicate acts and thus could be analogized to numerous state causes of action. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Claims under 42 U.S.C. § 1983 are another example. *See Wilson, supra.* Here, however, there is basically only one type of claim, a damages claim for lost wages and benefits for failure

to provide proper notice.[6] There should not be a problem of having too many analogies to choose from under state law.

The second step also does not point to borrowing a uniform federal limitation period. When claims may be multistate in nature, then the geographical inquiry of the second step supports adopting a federal standard. *See Lampf,* —— U.S. at ——, 111 S.Ct. at 2779 (quoting *Agency Holding Corp.,* 483 U.S. at 147, 107 S.Ct. at 2762). WARN claims, by definition, are limited to a single site. *See* 29 U.S.C. § 2101(a)(2)–(3) (defining "plant closing" & "mass layoff"). The lawsuit, however, need not be filed in the district where the site is located, but may be filed in any district where the employer transacts business. *Id.* § 2104(a)(5). Still, choice of law rules would likely point to borrowing the law of the site since that would be the place of the injury, and probably the place of the unlawful action as well. Therefore, it is unlikely that a WARN plaintiff would be able to forum shop for a locale with the most advantageous statute of limitations; the law of the site of the layoff would likely be chosen no matter where the suit happened to be filed. Also, difficult questions of which state law to choose are unlikely to arise since there will only be one site, not conduct occurring in multiple locations or claims based on unlawful interstate transactions. It is also possible that an employer will conduct layoffs at a number of sites on the same day. Assuming state law is to be borrowed and suits arise from a number of different sites in different states, each of the individual suits might have a different limitation period. However, such instances will give rise to separate suits, each with its own clear statute of limitations. Because the second step does not point to applying a uniform federal limitation period, the third step need not be considered. *Cf. Bowdry v. United Air Lines, Inc.,* 956 F.2d

999, 1005 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992).

However, even if it is assumed that the first two steps point to selecting a uniform federal limitations period, this is not the type of claim in which federal interests call for applying a uniform federal limitation period. *Wallace,* 818 F.Supp. at 197. *United Magazine,* 809 F.Supp. at 190–91, points to a variety of labor law actions for which the NLRA's six-month limitation period has been borrowed. The cases cited all involved actions in which a union necessarily was involved in a dispute with the employer.[7] While WARN specifically provides standing to unions, *see* 29 U.S.C. §§ 2101(a)(4), 2104(a)(5), and this case happens to have been brought by a union, there is no requirement that the claim be brought by a union. Also, the statute is not limited to union employees and claims can also be made by management employees. Additionally, WARN limits relief to a claim for damages and expressly excludes injunctive relief preventing a layoff or termination. Therefore, even when a union is involved, the circumstances do not necessarily involve a continuing employer-union or employer-employee relationship since the employees will already have been terminated or at least laid off for more than six months. Instead, claims will generally involve damages related to a former employment relationship, not a continuing employment relationship.

Even in the situations in which a union is involved, not all cases involving a dispute between a union and an employer call for borrowing the six-month limitation period under the NLRA. Despite being a subject that "peculiarly ... calls for uniform law," *Johnson v. Graphic Communications International Union,* 930 F.2d 1178, 1180 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991) (quoting *Team-*

---

**6.** There is also a provision for awarding civil penalties to a unit of local government. 29 U.S.C. § 2104(a)(3). For purposes of determining a statute of limitations, however, such a claim, would not necessarily be dissimilar to an employee's claim for damages.

**7.** *United Magazine* followed Second Circuit law. "In addressing the applicability of federal statutes of limitations in labor disputes, the Second

Circuit stated that it 'borrow[s] state limitation periods where ... claims are asserted against the union and concern disruption of internal union democracy,' and it 'borrow[s] ... [the NLRA six month] limitations period where claims [implicate] the collective bargaining relationship, even in the non-hybrid context.'" *United Magazine,* 809 F.Supp. at 190 (citations omitted; brackets and ellipses in *United Magazine* ).

*sters v. Lucas Flour*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)), a § 301 claim by a union against an employer for breach of the collective bargaining agreement borrows its limitation period from state contract law. *Johnson*, 930 F.2d at 1180 (citing *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *International Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222 (7th Cir.1986)). Like *Hoosier Cardinal*, the present case does not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it." *Johnson*, 930 F.2d at 1180 (quoting *Hoosier Cardinal*, 383 U.S. at 702, 86 S.Ct. at 1111). The dispute in *Hoosier Cardinal* involved a claim somewhat similar to the claim in the present case, the failure to pay accumulated vacation pay to terminated employees. Unlike, *Hoosier Cardinal*, the source of the present claim for wages and benefits to terminated or laid off employees is a statute, not a collective bargaining agreement. The union's standing in this case is based on its status as the exclusive bargaining representative under the NLRA, but the dispute in this case does not in any way involve interpretation or enforcement of the collective bargaining agreement. Relief under WARN is independent of any possible relief under the collective bargaining agreement or under any other federal labor law. *See* 29 U.S.C. § 2105. Although *Hoosier Cardinal* involved a dispute over enforcing a provision of the collective bargaining agreement, the NLRA six-month period was not borrowed. The present case does not involve enforcement of a provision of the collective bargaining agreement; it is a less compelling case for borrowing from the NLRA. *See Wallace*, 818 F.Supp. at 197 ("Since WARN rights have no direct relationship to collective bargaining procedures and because many WARN Act plaintiffs are not represented by unions," the six-month NLRA limitation period is inapplicable).

The NLRA limitation period is not a "close fit." *Lampf*, —— U.S. at ——, 111 S.Ct. at 2779. Federal interests do not call for applying the six-month limitation period of the NLRA even if the first two steps of the inquiry were satisfied. The limitation period of § 10(b) of the NLRA will not be borrowed.

There is no possibility that any claim of plaintiff would be barred unless the borrowed limitation period is less than one year. Other than § 10(b) of the NLRA, neither party points to any possibly analogous limitation period (state or federal) that is that short in length. Therefore, it is unnecessary at this time to determine the particular statute from which to borrow. Whatever limitation period is borrowed, plaintiff's claim would still be timely.

IT IS THEREFORE ORDERED that plaintiff's motion to strike fifth affirmative defense [63] is granted. The fifth affirmative defense of defendant's amended answer is stricken. Status hearing set for June 25, 1993 at 9:15 a.m., which is also the discovery closing date.