**UNITED PAPERWORKERS INTERNATIONAL UNION AND ITS LOCAL 340, on behalf of themselves, their members and others similarly situated, Plaintiffs–Appellees,**

v.

**SPECIALTY PAPERBOARD, INC. and Rock–Tenn Co., Defendants–Appellants.**

No. 1523, Docket 93–7093.

United States Court of Appeals, Second Circuit.

Argued June 11, 1993.

Decided July 19, 1993.

Heather Briggs, Burlington, VT (Downs, Rachlin & Martin, of counsel), for defendant-appellant.

John D. Shullenberger, Burlington, VT (Mickenberg, Dunn, Sirotkin & Dorsch, of counsel), for plaintiffs-appellees.

Before: OAKES, WINTER and McLAUGHLIN, Circuit Judges.

OAKES, Circuit Judge:

The facts of the case are simple: on Friday, March 15, 1991, defendant Specialty Paperboard Inc. ("SPI") sold a paper mill located in Sheldon Springs, Vermont to defendant Rock–Tenn Co. ("RTC") and terminated the jobs of all 232 employees of the mill. That same day, RTC rehired 141 of these employees. On March 13, 1992, the United Paperworkers International Union and Local 340 (the "union") brought suit on behalf of the laid-off employees under the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. §§ 2101 et seq. (1988).

The union alleged that SPI and RTC had failed to give notice to the workers of the impending lay-offs as required by WARN. The complaint was filed as a class action pursuant to 29 U.S.C. § 2104(a)(5) (1988) and Fed.R.Civ.P. 23(b)(2).

The United States District Court for the District of Vermont, Albert W. Coffrin, *Judge,* denied defendants' motion to dismiss the claim as time-barred. The district court declined to apply the National Labor Relations Act's ("the NLRA") six-month statute of limitations to WARN, which lacks any limitation period of its own. Instead, the court adopted Vermont's six-year statute of limitations for civil actions. SPI and RTC brought this interlocutory appeal under 28 U.S.C. § 1292(b) (1988) and Fed.R.App.P. 5(d) to challenge the district court's determination. For the following reasons, we affirm.

## DISCUSSION

WARN requires that companies with one hundred employees or more provide their workers with a minimum of sixty-days' written notice before a plant closing[1] or mass layoff.[2] While a termination immediately qualifies as an employment loss, 29 U.S.C. § 2101(a)(6)(A), a layoff must last more than six months to qualify. 29 U.S.C. § 2101(a)(6)(B). An employer who fails to provide the statutory notice before such a layoff or plant closing is liable to those employees suffering an employment loss[3] for backpay and lost benefits for each day of violation. 29 U.S.C. § 2104(a)(1). WARN provides for a civil action for damages in federal court.[4]

As often happens, Congress failed to provide WARN with a statute of limitations,

---

1. A "plant closing" is the permanent or temporary shutdown of a single site of employment which results in an employment loss to a certain minimum number of employees. 29 U.S.C. § 2101(a)(2).

2. A "mass layoff" is a reduction in force that is not a result of a plant closing and which results in an employment loss to a certain minimum number of employees. 29 U.S.C. § 2101(a)(3).

3. "The term 'employment loss' means (A) an employment termination, other than a discharge

for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period...." 29 U.S.C. § 2101(a)(6).

4. "The remedies provided for in this section shall be the exclusive remedies for any violation of this chapter. Under this chapter, a Federal court shall not have the authority to enjoin a plant closing or mass layoff." 29 U.S.C. § 2104(b).

leaving it to the courts to find an appropriate period. SPI and RTC argue that the six-month period of § 10(b) of the NLRA, 29 U.S.C. § 160(b) (1988), should apply to WARN claims. According to the union, however, the district court correctly found Vermont's general six-year statute of limitations for civil actions, Vt.Stat.Ann. tit. 12, § 511 (1973 & 1992 Supp.), the most appropriate period to apply. The statute reads as follows:

> A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter.

This limitations period applies to both tort and contract claims.[5]

In the face of repeated Congressional silence, the Supreme Court has developed an analytic framework for courts to use in the search for the proper statute of limitations. Although federal law determines which statute of limitations to apply, see *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Court has recently reiterated that when a federal statute contains no limitations period, courts should " 'borrow[ ]' or 'absorb[ ]' the local time limitation most analogous to the case at hand." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, —, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991) (citations omitted). If the state limitation would undermine the goals of the federal statute, however, the Supreme Court has set forth limited circumstances under which it might be preferable to borrow a federal limitations period. *Id.*

The Supreme Court has emphasized that these circumstances are "closely circum-scribed." *Reed v. United Transp. Union*, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). We have recently highlighted that this statement is equally true in the labor context:

> [W]e borrow federal rather than state limitations periods where (1) a federal rule ... clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation "a significantly more appropriate vehicle for interstitial lawmaking."

*Phelan v. Local 305*, 973 F.2d 1050, 1058 (2d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993) (quoting *DelCostello v. Brotherhood of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983)).[6] The considerations set forth in *DelCostello* have led to divergent outcomes, even for those statutes which explicitly regulate trade unions. Rightly, courts have been reluctant to consider every suit in which a union plays a part as requiring a federal limitations period. *See Hoosier*, 383 U.S. at 707, 86 S.Ct. at 1114 (applying state statute of limitations to § 301 claim for vacation pay); *DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91 (applying NLRA statute of limitations to hybrid § 301/ duty of fair representation claim); *Reed*, 488 U.S. at 334, 109 S.Ct. at 630 (applying state personal injury statute of limitations to union member free speech claim). Each case turns on its individual facts. *See Phelan*, 973 F.2d at 1058–59. In *DelCostello*, the Court stated that it would look to the federal limitations period because of the national concern for "stable bargaining relationships and finality of private settlements." 462 U.S. at 171, 103 S.Ct. at 2294 (citation omitted). In *Reed*, on the other hand, where the concerns were tangential to the collective bargaining rela-

---

**5.** Personal injury claims, however, are subject to a three-year statute of limitations. *See* Vt.Stat. Ann. tit. 12, § 512 (1973 & 1992 Supp.).

**6.** We have stated this test more expansively in other cases. Thus, we found that applying a federal limitations period might be appropriate "(1) where the statutory claim in question covers a multiplicity of types of actions, leading to the possible application of a number of different types of state statutes of limitations, (2) where the federal law claim does not precisely match any state law claim; (3) where the challenged action is multistate in nature, perhaps leading to forum shopping and inordinate litigation expense, and (4) where a federal statute proves a very close analogy." *Ceres Partners v. Gel Associates*, 918 F.2d 349, 357 (2d Cir.1990). These tests differ only in wording and should not be seen to rely on different considerations.

tionship, the court applied a state limitations period. 488 U.S. at 334, 109 S.Ct. at 630; *see also Hoosier,* 383 U.S. at 702, 86 S.Ct. at 1111 ("Lack of uniformity. in this. area [i.e., outside of collective bargaining] is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy."). As noted in *Phelan,* "[w]e therefore have borrowed the Section 10(b) limitations period where claims have directly implicated the collective bargaining relationship...." 973 F.2d at 1060.

Several courts have already addressed the lack of a limitations period for a WARN action, with divergent results. *Compare Wallace v. Detroit Coke Corp.,* 818 F.Supp. 192 (E.D.Mich.1993) (finding the NLRA statute of limitations inapplicable in WARN case and relying on six-year state contract statute of limitations), *Automobile Mechanics' Local No. 701 of the Int'l Assoc. of Machinists & Aerospace Workers v. Santa Fe Terminal Services, Inc.,* 830 F.Supp. 432 (N.D.Ill.1993) (rejecting NLRA § 10(b) but declining to choose appropriate state limitations period), *and Frymire v. Ampex Corp.,* 821 F.Supp. 651 (D.Colo.1993) (following *Wallace*) *with Newspaper and Mail Deliverers' Union of N.Y. and Vicinity v. United Magazine Co.,* 809 F.Supp. 185 (E.D.N.Y.1992) (finding NLRA most analogous), *and Staudt v. Glastron, Inc.,* No. SA–92–CA–1174, 1993 WL 85356, 1993 U.S.Dist. LEXIS 3090 (W.D.Tex. Feb. 23, 1993) (same). No court of appeals, however, has reached a decision on this issue.

A WARN cause of action does not fit the limited circumstances under which a federal statute of limitation should be applied. Courts are only to apply a federal statute of limitations if the federal statute is clearly more analogous and the state period would undermine federal policy. Initially we note that Congress has characterized a WARN claim as a private civil action which should not be interpreted as altering federal labor policy. *See* 29 U.S.C. § 2105 ("The rights and remedies provided to employees by the Act are in addition to, and not in lieu of any other contractual or statutory rights and remedies ... and are not intended to alter or affect such rights and remedies....") RTC

and SPI argue, however, that WARN is exactly the kind of statute which requires a federal limitations period, specifically that provided in NLRA § 10(b).

Section 10(b) of the NLRA gives aggrieved persons six months to file a charge with the National Labor Relations Board (the "Board") alleging unfair labor practices. Unlike WARN, however, the NLRA is a statute enacted to protect the right of workers to join together in labor organizations and collectively bargain for the terms and conditions of employment. In rejecting an employer's claim that Maine's plant closing law was preempted by the NLRA, the Supreme Court underscored the differing policies behind the NLRA and the notification statute. "Such regulation [a state-law plant closing notice requirement] provides protections to individual union and nonunion workers alike, and thus 'neither encourage[s] nor discourage[s] the collective-bargaining processes that are the subject of the NLRA.' " *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 20–21, 107 S.Ct. 2211, 2222–23, 96 L.Ed.2d 1 (1987) (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 755, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985)). The purpose of WARN, unlike that of the NLRA, is not to ensure labor peace but to alleviate the distress associated with job loss for both the workers and the community in which they live. This is demonstrated by the provision in the statute of causes of action for local governments as well as for individual workers and unions. When a union brings an action, it thus serves only as the representative of the class of employees that has been harmed. The NLRA, in contrast, does not protect community interests in avoiding job loss. This interest has been well characterized by the Maine Supreme Judicial Court, in a discussion of Maine's plant closing law, which is quite similar to WARN. The court stated that such a law was intended "to ameliorate the effects on a community when a large employer voluntarily goes out of business.... This would necessarily lessen the numbers of persons immediately needing welfare and other assistance from the community or State." *Shapiro Bros. Shoe Co., Inc. v. Lewiston–Auburn Shoeworkers Pro-*

*tective Assoc.,* 320 A.2d 247, 254 (Me.1974). *See also Smaller Mfrs. Council v. Council of the City of Pittsburgh,* 85 Pa.Cmwlth. 533, 485 A.2d 73, 75–76 (1984) (discussing city's interest in enacting plant closing notification ordinance).

WARN, like Maine's plant closing law, has only a tangential effect on collective bargaining, making the comparison to the NLRA a weak one at best. Those courts which have deemed the NLRA period most applicable to WARN actions have failed to grasp this crucial distinction between statutes which specifically regulate the collective bargaining relationship and those which remain peripheral to that concern. *See United Magazine Co.,* 809 F.Supp. at 190–92; *Staudt,* 1993 WL 85356, at *2, 1993 U.S.Dist. LEXIS 3090, at *3–6. In *Santa Fe Terminal Services,* the United States District Court for the Northern District of Illinois succinctly described the error which the courts in *United Magazine* and *Staudt* had made: "even when a union is involved, the circumstances do not necessarily involve a continuing employer-union or employer-employee relationship since the employees will already have been terminated or at least laid off for more than six months." 1993 WL 319649, at *4, 1993 U.S.Dist. LEXIS 5859, at *15. WARN, therefore, neither "encourages nor discourages" collective bargaining, thus differing in purpose from the NLRA.

Other reasons as well persuade us that the NLRA is not sufficiently analogous to override the traditional assumption that a state limitations period should be applied. The NLRA has, for example, a complex administrative structure in which the aggrieved person (usually a union) files a charge with the Board. *See, e.g., Burnett v. Grattan,* 468 U.S. 42, 50–52, 104 S.Ct. 2924, 2929–31, 82 L.Ed.2d 36 (1984) (state limitations period for administrative action inappropriate for federal civil rights claim; court action, with its practical difficulties for individual litigant, requires more time). The decision whether to issue a complaint rests entirely within the discretion of the Board. *Jacobsen v. NLRB,* 120 F.2d 96 (3d Cir.1941). "The complaint,

which is drafted by the Regional Attorney [for the Board] . . . specifies the violations of the Act [NLRA] which the respondent is alleged to have committed and contains a notice of the time and place of hearing." Archibald Cox, Derek C. Bok, Robert A. Gorman, and Matthew W. Finkin, Labor Law 109 (11th ed. 1991). A Board attorney is responsible for prosecuting the case. *Id.* The burden on complainants in pursuing a claim is minimal, justifying the short statute of limitations. Moreover, requiring an agency like the Board to face differing statutes of limitations would place a heavy burden on its resources. *See Occidental Life Ins. Co. of Calif. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (applying federal period for Title VII suits to avoid hindering the operations of the EEOC).

In contrast, WARN requires simply that an employer provide sixty-days' notice before layoffs or plant closings and gives employees a cause of action for damages if the employer fails to do so. Although damages are measured as two months pay and benefits, the WARN claim is not a claim for backpay because it does not compensate for past services. This distinction explains why the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (1988), is inapplicable.[7] Unlike most employees who have not received the minimum wage, victims of a failure to warn will often be unaware that they have suffered a compensable harm. As the district court noted in this case, "WARN Act damages compensate an employee for the injuries caused by his or her improper termination, much akin to either an action for wrongful discharge or severance pay . . . ." *United Paperworkers Int'l Union v. Specialty Paperboard Inc.,* No. 93–7093, at 6, 1992 WL 524306 (D.Vt. Aug. 31, 1992). Moreover, like the NLRA, the FLSA has an administrative structure to help workers protect their statutory rights. 29 U.S.C. §§ 211, 216(c) (1988). For all of the above reasons, we conclude that neither the NLRA nor the FLSA provides a much closer analogy to WARN than any state statute, as required by part one of the *Phelan/DelCostello* test.

---

**7.** FLSA's limitations periods is two or three years, depending on the willfulness of the viola-

tion. 29 U.S.C. § 255 (1988). Under FLSA, therefore, this suit would still be timely.

Part two of the *Phelan* test justifies application of a federal limitations period only if federal policy or the "practicalities of litigation" make the application of state statutes problematic.[8] We are not persuaded that those concerns are present here. As discussed above, state statutes of limitations in WARN actions will not undermine any federal regulatory scheme—for collective bargaining or otherwise. In addition, the district court correctly noted that neither predictability nor judicial economy would suffer from an application of state limitations periods. In contrast to 42 U.S.C. § 1983 (1988) or RICO, 18 U.S.C. § 1964 (1988), which provide grounds for a variety of causes of action, *see Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (borrowing antitrust limitation in civil RICO case because of the possible multiplicity of RICO actions); *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984) (finding state tort law statutes of limitations appropriate for all claims under 42 U.S.C. § 1983), WARN claims give rise to only one type of claim. Thus, predictability does not counsel the adoption of a federal period. WARN claims allege only the failure to give statutory notification, presenting no fear of widely differing classifications of the claims according to their facts.

Nor does WARN present claims which are multistate in nature. WARN claims are limited to a single site. Although suits may be brought either where the site is located or where the employer does business, 29 U.S.C. § 2104(a)(5), the advantages of forum shopping are minimal. The district court properly found this concern unfounded in WARN actions:

> The term "plant closing" as defined by the Act is limited to single sites of employment, and venue is limited to the district where the violation is alleged to have oc-

curred or where the employer does business; unless a single plant site straddles the boundary between two states, it is unlikely prospective plaintiffs will have a broad choice of fora in which to bring their claims or that doubt will arise as to in which state triggering events occurred. Therefore, geographic considerations do not counsel for the application of a uniform federal limitations period for WARN Act claims.

*Specialty Paperboard*, No. 93–7093, at 7 (citations omitted).[9] The legislative history of WARN confirms this interpretation. According to the Conference Report, the conferees had removed "all references to 'place of employment' and replace[d] them with 'single site of employment.' This change is intended to clarify that geographically separate operations are not to be combined when determining whether the employment threshold for triggering the notice requirement is met." House Conf.Rep. No. 576, 100th Cong., 2d Sess. 1045, *reprinted in* 1988 U.S.C.C.A.N. 2078, 2079. Generally, therefore courts will have little difficulty in determining which state's law to apply and workers will gain few advantages by suing in a court far from the site of injury.

Finding that there is no reasonable basis for adopting a federal statute of limitations, we are faced with the selection of an appropriate state limitation. We note that the Supreme Court has recently stated that even when state law does not provide an exact analogy, state law remains the usual source for limitations periods. *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294 ("as courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remain the norm for borrowing of limitations periods"). The district court found Vermont's six-year statute of limitations to be most analogous, in light of its application

---

8. In discussing the second part of the *Phelan/DelCostello* test, we do not mean to imply that both parts need not be met. We only seek to be thorough in our discussion of WARN.

9. Similarly, another district court found that "choice of law rules would likely point to borrowing the law of the site since that would be the place of the injury, and probably the place of the

unlawful action as well. Therefore, it is unlikely that a WARN plaintiff would be able to forum shop for a locale with the most advantageous state of limitations; the law of the site of the layoff would likely be chosen no matter where the suit happened to be filed." *Santa Fe Terminal Services*, 1993 WL 319649, at *4, 1993 U.S.Dist. LEXIS 5859, at *13.

to actions for wrongful discharge. Vermont applies the civil action statute of limitations to both contract and tort claims. *See* Vt. Stat.Ann. tit. 12, § 511 (1973 & 1992 Supp.)

Although we do not find any state substantive claim perfectly analogous to WARN,[10] we find that the contract statute of limitations should be applied. In Vermont, workers' compensation benefits are subject to the contract statute of limitations. *See Hartman v. Ouellette Plumbing & Heating Corp.*, 146 Vt. 443, 507 A.2d 952, 953 (1985); *Fitch v. Parks & Woolson Machine Co.*, 109 Vt. 92, 191 A. 920, 922 (1937). Such a suit shares with a WARN claim an interest in protecting workers from unexpected joblessness or loss of hours. The Vermont Supreme Court in *Fitch* characterized workers' compensation claims as contract actions because unlike tort, "[n]egligence or wrong by the employer need not be shown to entitle a claimant to benefits, and contributory negligence, assumption of risk or negligence of a fellow servant do not avail the employer as defenses." 109 Vt. at 98, 191 A. at 923. Here as well, the employees need only show that the plant closed and that they were not forewarned. Moreover, in *Foote v. Simmonds Precision Products Co., Inc.*, 613 A.2d 1277 (Vt.1992), the Vermont Supreme Court recognized that promissory estoppel may alter the terms of an at-will employment contract and provide a remedy for wrongful discharge. Like such a contract action, WARN actions in some sense compensate workers and communities for their reliance interests. Thus, we find an application of the contract limitations period best approximates the federal legislative intent. Especially in light of Congress' characterization of the WARN claim as a civil action, we find the contract statute of limitations sufficiently analogous.[11] *See Frymire v. Ampex Corp.*, 821 F.Supp. 651 (D.Colo.1993) (applying contract statute

of limitations to WARN claim); *Wallace v. Detroit Coke Corp.*, 818 F.Supp. 192 (E.D.Mich.1993) (same).

We must emphasize, however, that this determination does not mean that WARN *is* a contract action and that it should be found to be an implied term in every employment contract. We are cognizant of the concerns that would raise. "If the Court were to read an implied contract into the language of the ... Act, there is no reason why every statute that grants a right should not be read that way. The effect would be widespread—hundreds of statutes would be interpreted to create legally enforceable contract rights." *Russell v. District of Columbia*, 747 F.Supp. 72, 79 (D.D.C.1990), *aff'd without op.*, 984 F.2d 1255 (D.C.Cir.1993).

### CONCLUSION

We affirm the determination of the district court that the union's suit is not time-barred, as the appropriate statute of limitations has not run.

---

10. As a state-law analogy, Vermont's minimum wage statute, Vt.Stat.Ann. tit. 21, § 381 *et seq.* (1987 & 1992 Supp.), is inappropriate for the same reasons as the FLSA. Nonetheless, this statute also lacks a limitations period. Vt.Stat. Ann. tit. 21, § 395 (1987 & 1992 Supp.). At oral argument, attorneys for the union indicated that Vermont trial courts have applied the two-year statute of limitations period of the FLSA. 29 U.S.C. § 255 (1988) (three years for willful violations). We have been unable to confirm that

this, rather than use of the general six-year Vermont statute of limitations for civil actions, is Vermont practice. In either case, the union would prevail here since it brought its cause of action within one year of the plant closing.

11. In any case, the limitations period in Vermont would be the same even if a WARN violation were to be characterized as a tort. *See* Vt.Stat. Ann. tit. 12, § 511 (1973 & 1992 Supp.).